IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL FILE NO. |
| v. | 1:05-CR-477-10-CC |
| MARCO AURELIO DELEON, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Pending before the court is defendant Marco Deleon's (Defendant's) Motion to Suppress. (Doc. 610). Defendant moves to suppress evidence seized from his truck and statements that he made on August 5, 2005. A hearing on this motion was held before the undersigned magistrate judge on December 20, 2006. All transcript references are to the transcript of that hearing. For reasons discussed below, the undersigned recommends that this motion be denied.

**I.   FACTS**

In July and August of 2005, the United States Drug Enforcement Administration (DEA) was conducting a wiretap investigation into an alleged drug trafficking operation led by an individual known as "Gotti." Wiretaps, surveillance, and a prior drug seizure from Gotti, led the DEA to conclude that "Camerone," an individual based in Mexico,

was Gotti's boss and source of supply. On July 29, 2005, the DEA intercepted a call between Gotti and Camerone in which they discussed that Gotti would be sending $800,000 in drug proceeds. On August 3, 2005, Gotti spoke with Chapalene, whom the DEA believed was an intermediary between Gotti and Camerone. Gotti and Chapalene discussed that someone would be arriving in a truck to pick up the drug proceeds. Gotti gave directions to a warehouse and requested that the driver arrive around 7:00 p.m. on August 4, 2005. Chapalene told Gotti that he would have the driver call him. (Tr. at 60-64).

On August 4, 2005, at about 12:30 p.m., Chapalene spoke again with Gotti and asked if Gordito had called. At about 1:10 p.m., Gordito called Gotti and Gotti gave Gordito directions to the warehouse, which the DEA had previously identified. Gordito said that he was about five hours away. Gotti gave Gordito more detailed directions at about 7:27 p.m. that night. (Tr. at 64-65, 67).

At approximately 7:47 p.m. that night, two vehicles blocked traffic and allowed defendant to pull his tractor-trailer into the warehouse. Agents then intercepted additional calls between Gotti and his accomplices about obtaining the proceeds from a stash house and bringing them to the warehouse. A short time later, agents observed that a vehicle arrived at the warehouse and someone carried a bag from the vehicle into the warehouse. (Tr. at 67-72).

2

At approximately 9:38 p.m., Gotti spoke with Chapalene and told him that he was meeting with Gordito and that Gotti would call him back after he determined how much money there was.  At approximately 10:06 p.m., DEA agents observed the tractor-trailer depart, followed by a Gotti accomplice, Gordo, in another vehicle.  Gordo then called Gotti and told him that "the dove flew away."  (Tr. at 70-71).

At the instructions of the DEA, Georgia State Patrol Sergeant Mark Mitchell stopped the tractor-trailer that had been at the warehouse and was driven away from the warehouse by defendant.  Sergeant Mitchell had observed the tractor-trailer traveling at 76 miles per hour (six miles per hour over the speed limit) and crossing the white right line three times over a quarter mile period.  (Tr. at 12).

From the time Sergeant Mitchell activated his blue lights, the encounter with defendant was recorded on his patrol car's audio-video system.  (Gov. Ex. 1).  After telling defendant that he would be issued a warning and returning his license and other paperwork to him, Sergeant Mitchell asked defendant if he would consent to a search of the truck and trailer.  Defendant consented to the search.  (Gov. Ex. 1 at 00:11:38-57).  Defendant signed a written consent form which stated that Sergeant Mitchell and another identified officer of the State Patrol would conduct the search.  (Gov. Ex. 2).

Sergeant Mitchell asked defendant to unlock the trailer and open the door and defendant did as asked.  The trailer contained pallets of cardboard drums containing pork

3

meat. In the first drum Sergeant Mitchell found a heavy-duty black trash bag. Inside the bag were vacuum-sealed bundles of U.S. currency wrapped with rubber bands that contained written notes indicating the amount of money. (Tr. at 35-36).

Sergeant Mitchell told defendant that he would have to call in some federal help and asked defendant to accompany them to the State Patrol post to enable them to finish their search. Defendant agreed to go to the State Patrol post. (Gov. Ex. 1 at 29:20-30:30). Sergeant Mitchell then rode with defendant to the State Patrol post less than a mile away. At the post, DEA agents participated in the search and seized approximately $785,000 from defendant's tractor-trailer. (Tr. at 39).

During the roadside encounter with Sergeant Mitchell, and at the State Patrol post, defendant was not under arrest and was free to move about. The officers told defendant that he was not under arrest and he was never restrained. (Gov. Ex. 1 at 00:29:47).

Defendant's cell phone and logbook were searched and the contents copied after they were retrieved by the DEA from the tractor at the State Patrol post. (Doc. 760 at 8).

## II.  DISCUSSION

### A.  The search was not dependent on defendant's consent

Defendant first argues that the search of the tractor-trailer by the DEA at the State Patrol post was beyond the scope of his consent. The court need not address this argument because there was probable cause to stop and search the tractor-trailer.

Probable cause to search a vehicle exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." United States v. Alexander, 835 F.2d 1406, 1409 (11th Cir. 1988) (quoting United States v. Clark, 559 F.2d 420, 424 (5th Cir. 1977)).  The Fourth Amendment does not require the police to obtain a warrant to search a vehicle so long as the police have probable cause to believe that such vehicle contains contraband or evidence of a crime.  Chambers v. Maroney, 399 U.S. 42, 44, 52, 90 S.Ct. 1975, 1977, 1982, 26 L.Ed.2d 419 (1970).  Even assuming the search exceeded the scope of defendant's consent, the wiretaps and surveillance clearly provided probable cause to believe that defendant was Gordito and that the tractor-trailer that he drove away from the warehouse contained the proceeds of drug trafficking.  Moreover, once probable cause was established, the law enforcement officers involved in the investigation were justified in completing their search at the State Patrol Post rather than at the side of the road.  See Texas v. White, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975).

**B.    The DEA Agents were authorized to seize and copy information from defendant's cell phone and log book**

Defendant next argues that the DEA agents had no legal basis to seize and copy evidence from his cell phone and log book.  (Doc. 754 at 4-5).  The Court disagrees.

Cell phones, complete with memory of numbers recently or frequently called, are a known tool of the drug trade. See United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990) (stating that a cellular phone is "a known tool of the drug trade"); United States v. Slater, 971 F.2d 626, 637 (10th Cir. 1992) (stating that a cell phone is a "recognized tool of the trade in drug dealing"); United States v. Wiseman, 158 F.Supp.2d 1242, 1249 (D. Kan. 2001) (stating that it is "common knowledge in the courts . . . that cellular phones, complete with memory of numbers recently or frequently called, or their 'address books,' are a known tool of the drug trade").

Moreover, in this case, the DEA had information that defendant had been in telephone communication with Gotti earlier in the afternoon about picking up the drug proceeds. (See Tr. at 60-64). Defendant also admitted to Sergeant Mitchell that he had been on the telephone shortly before he was stopped. (Gov. Ex. 1 a 23:52:00-02). Thus, the cell phone was an obvious source of evidence. Similarly, the log book could provide evidence of where the truck had originated and traveled, and thus, provide evidence of other co-conspirators. The officers were entitled to copy both items to prevent destruction of potential evidence. Officers conducting a search based on probable cause are not limited to seizing contraband. They may seize evidence for the purpose of proving a crime. See Warden v. Hayden, 387 U.S. 294, 306, 87 S.Ct. 1642, 1649-50, 18 L.Ed.2d 782 (1967).

6

**C.     Defendant's statements should not be suppressed**

Defendant's post-hearing brief contains no argument regarding the suppression of his statements. Nevertheless, there is no basis to suppress his statements.

The well-known general rule is that a person who is arrested and detained must be given Miranda warnings in order for his statements, made in response to interrogation by a law enforcement officer, to be used against him in court. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda requires, among other things, that an arrestee be advised before questioning that he has the right to remain silent. Id. at 436, 86 S.Ct. at 1627. Miranda warnings are required only when a defendant is interrogated while in custody. See Stansbury v. California, 511 U.S. 318, 320-21, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994).

Defendant was not arrested and was told that he was not under arrest. (Gov. Ex.1 at 00:29:47). The video of the events shows that at the State Patrol post, defendant was not restrained and was free to move about as he wished. (Gov. Ex. 1). Although he was not free to leave during the roadside encounter with Sergeant Mitchell, this stop was conducted in all respects as a routine traffic stop. Roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of triggering the requirements of Miranda. Berkemer v. McCarty, 468 U.S. 420, 439-42, 104 S.Ct. 3138, 3150-52, 82 L.Ed.2d 317 (1984).

7

## III   CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress (Doc. 610) be **DENIED**.

**SO RECOMMENDED** this 22nd day of February, 2007.

    /s/ Gerrilyn G. Brill
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.CRM\deleon rr.wpd